IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
GENERAL CIVIL DIVISION

|  |  |  |
|---|---|---|
| STEAMFITTERS LOCAL 449 PENSION & RETIREMENT SECURITY FUNDS, On Behalf of Itself and All Others Similarly Situated, | ) ) ) ) ) | Case No.   04 03013 <br><br> CLASS ACTION   DIVISION H <br><br> COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| QUALITY DISTRIBUTION, INC., THOMAS L. FINKBINER, SAMUEL M. HENSLEY, ANTHONY R. IGNACZAK, JOSHUA J. HARRIS, MICHAEL D. WEINER, MARC J. ROWAN, MARC E. BECKER, DONALD C. ORRIS, CREDIT SUISSE FIRST BOSTON LLC, BEAR, STEARNS & CO. INC. and DEUTSCHE BANK SECURITIES INC., | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | DEMAND FOR JURY TRIAL |



## SUMMARY OF ACTION

1.    This is a securities class action on behalf of all purchasers of the common stock of Quality Distribution, Inc. ("Quality" or the "Company") pursuant or traceable to Quality's November 6, 2003 Initial Public Offering ("IPO"), against Quality, certain of its directors/officers and the lead underwriters of its IPO for violations of the Securities Act of 1933 (the "1933 Act").  Plaintiff pursues this action based upon theories of strict liability and negligence only.

## INTRODUCTION AND OVERVIEW OF ACTION

2.    On November 6, 2003, Quality completed an IPO of 7,000,000 shares of stock at $17 per share pursuant to a Registration Statement/Prospectus.  The offering provided that Quality would receive $110.67 million in net proceeds and the underwriters would receive $8.33 million.[1]  In fact, the Registration Statement/Prospectus was materially false and misleading in that the financial statements set forth in the Registration Statement/Prospectus overstated the Company's earnings and accounts receivables and understated its reserves.

3.    Less than three months after the IPO, Quality issued a press release on February 2, 2004, after the market closed, which disclosed that the Company would take a fourth quarter charge and restate its financial results for FY 2001-2002 and its results for the first three quarters of 2003, materially reducing its operating income for the respective periods, after discovering "irregularities" at its insurance brokerage subsidiary, Power Purchasing Inc. ("PPI").

---

[1]    The IPO prospectus also granted the underwriters a 30-day option to purchase up to an additional 875,000 shares to cover any over-allotments.

- 1 -

4.    Quality's stock price reacted swiftly and negatively to these revelations, falling almost 16% to $15.75 on huge volume of 3.6 million shares (versus the previous full-day average of 80,700 shares) – dropping below the offering price set just three months earlier.

5.    Public investors who purchased shares in the IPO based on Quality's representations, paying $17 per share for Quality stock, have suffered tens of millions of dollars in damages.

## JURISDICTION AND VENUE

6.    The claims alleged herein arise under §§11, 12(a)(2) and 15 of the 1933 Act, 15 U.S.C. §§77k, 77(l)(a)(2) and 77o. Jurisdiction is conferred by §22 of the 1933 Act and venue is proper pursuant to §22 of the 1933 Act. The statute (§22 of the 1933 Act) explicitly states that "[t]he district courts of the United States ... shall have jurisdiction ... concurrent with State and Territorial courts" of actions filed under the 1933 Act. The statute also states that "[e]xcept as provided in section 16(c), no case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court in the United States." Section 16(c) refers to "covered class actions," which are defined as lawsuits brought as class actions or brought on behalf of more than 50 persons asserting claims under state or common law. This is an action asserting federal law claims. Thus, it does not fall within the definition of a "covered class action" under §16(c) and therefore is not removable to federal court under the Securities Litigation Uniform Standards Act of 1998.

7.    The violations of law complained of herein occurred in this County, including the dissemination of materially false and misleading statements complained of herein into this County. Quality's principal place of business is located in this County and each of the bank defendants conduct business in this County.

- 2 -

## THE PARTIES

8.    Plaintiff Steamfitters Local 449 Pension & Retirement Security Funds purchased shares of Quality common stock pursuant and traceable to the Company's Registration Statement/Prospectus for its November 6, 2003 IPO and was damaged thereby.

9.    Defendant Quality is a Florida Corporation with its corporate headquarters located in Tampa, Florida. Quality operates a large bulk tank-truck network in North America. The Company transports a broad range of chemical products and provides its customers with value-added services, including intermodal, transportation management, transloading, tank cleaning, dry-bulk hauling, leasing and other logistics services. Quality extensively utilizes third-party affiliate terminals and owner-operator drivers in its core bulk service network. PPI, Quality's wholly owned subsidiary consolidated in its financial results, operates as an insurance broker, assisting independent contractors in obtaining various lines of insurance. Many of PPI's clients are truck owners/operators and independent contractors, whom drive for Quality's distribution business. Quality's common stock traded in an efficient market on the NASDAQ National Market System during the Class Period.

10.    Defendant Thomas L. Finkbiner ("Finkbiner") was the Chairman of the Board, President and Chief Executive Officer of Quality. Finkbiner signed the false and misleading Registration Statement issued pursuant to the Company's IPO.

11.    Defendant Samuel M. Hensley ("Hensley") was the Senior Vice President and the Chief Financial Officer of Quality. Hensley signed the false and misleading Registration Statement issued pursuant to the Company's IPO.

12.    Defendant Anthony R. Ignaczak ("Ignaczak") was a director of Quality. Ignaczak signed the false and misleading Registration Statement issued pursuant to the Company's IPO.

13.    Defendant Joshua J. Harris ("Harris") was a director of Quality. Harris signed the false and misleading Registration Statement issued pursuant to the Company's IPO.

14.    Defendant Michael D. Weiner ("Weiner") was a director of Quality. Weiner signed the false and misleading Registration Statement issued pursuant to the Company's IPO.

15.    Defendant Marc J. Rowan ("Rowan") was a director of Quality. Rowan signed the false and misleading Registration Statement issued pursuant to the Company's IPO.

16.    Defendant Marc E. Becker ("Becker") was a director of Quality. Becker signed the false and misleading Registration Statement issued pursuant to the Company's IPO.

17.    Defendant Donald C. Orris ("Orris") was a director of Quality. Orris signed the false and misleading Registration Statement issued pursuant to the Company's IPO.

18.    Collectively, defendants Finkbiner, Hensley, Ignaczak, Harris, Weiner, Rowan, Becker and Orris will be referred to herein as the "Individual Defendants."

19.    Defendants Credit Suisse First Boston LLC, Bear, Stearns & Co. Inc. and Deutsche Bank Securities Inc. (collectively the "Underwriter Defendants") are investment banking firms which specialize, *inter alia*, in underwriting public offerings of securities. These firms served as co-lead underwriters of the Quality IPO in which they sold millions of shares of Quality stock to the public at an artificially inflated price and for which they received a significant portion of the money raised in the IPO. Because of their close association with Quality, the Underwriter Defendants had constant access to Quality's internal corporate information.

20.    Each of the defendants named in ¶¶10-17 (the "Individual Defendants") participated in the IPO by, among other things, preparing, reviewing and signing the Registration Statement.

## SUBSTANTIVE ALLEGATIONS

21.    On November 6, 2003, the defendants completed a 7,000,000 share IPO of Quality stock priced at $17 per share, with net proceeds to Quality of $110.67 million.

22.    The November 6, 2003 IPO was accomplished via a Registration Statement and Prospectus filed with the SEC and effective on November 6, 2003. Each Individual Defendant signed the Registration Statement. The Underwriter Defendants wrote the Registration Statement and Prospectus. The Registration Statement/Prospectus contained Quality's audited GAAP consolidated financial statements for fiscal years ending December 31, 2001 and December 31, 2002 and Quality's unaudited financial information for the nine months ending September 30, 2003.

23.    Quality included operating results for the year ending December 31, 2001 as follows: operating income of $28.3 million and a net loss of ($13.4) million.[2]

24.    Quality included operating results for the year ending December 31, 2002 as follows: operating income of $27.3 million and a net loss of ($45.1) million.

---

[2]    Quality's financial information for the year ending December 31, 2001 included in the Registration Statement/Prospectus contained restated financial statements for the year. The Registration Statement/Prospectus contained the following reasoning for the restatement of the 2001 financial statements:

> The consolidated financial statements as of and for the year ended December 31, 2001 have been restated to reflect corrections of a clerical error in recording revenues and establishing a reserve for incurred but not reported insurance losses relating to a subsidiary that markets insurance products. These corrections resulted in an increase in net loss of approximately $1 million, an increase of claims loss reserves of $0.1 million and reduction in long term receivables of $0.9 million.

> In addition, we reclassified our insurance subsidiary's premium revenue and insurance loss expenses to a gross basis versus a net basis for 2000 and 2001. The impact of those reclassifications increased both other service revenue and insurance claims expense by $3.1 million and $2.4 million for 2000 and 2001, respectively.

- 5 -

25.    Quality included operating results for the nine months ending September 30, 2003

as follows: operating income of $30.2 million and a net income of $6.4 million.

26.    In fact, these results were materially false and misleading, as Quality has since

admitted.

**Quality's Restatement of Its Financial Results**

27.    On February 2, 2004, after the market closed, the Company issued a press release

entitled "Quality Distribution Reports Irregularities at Non-Core Insurance Brokerage

Subsidiary; Company Will Take Fourth Quarter Charge and Restate Results." The press release

stated in part:

> Quality Distribution, Inc. announced today that it has discovered irregularities at
> Power Purchasing, Inc. ("PPI"), a non-core subsidiary. PPI primarily assists
> independent contractors in obtaining various lines of insurance for which PPI
> derives fees as an insurance broker.
>
> The Company said that its investigation to date indicates that the irregularities
> resulted from unauthorized actions by PPI's former manager. The former
> manager failed to renew certain insurance policies for PPI's customers yet
> continued to collect premiums in violation of insurance laws. The former
> manager concealed these activities from the Company. Based on the investigation
> to date, the former manager appears to have been the only person engaged in
> these irregularities, which were limited to PPI.
>
> The Company has notified the Insurance Department of the State of Pennsylvania,
> where PPI is domiciled and has contacted, or is contacting, other appropriate
> regulatory agencies. The Company is in the process of streamlining PPI's
> operations and a risk management executive, who is a member of Quality
> Distribution's senior management, is now managing PPI.
>
> Financial Impact
>
> The investigation was initiated by the Company's internal audit department and is
> currently being conducted by the Audit Committee of the Board of Directors with
> the assistance of outside legal counsel and a forensic accounting firm. The results
> of the investigation conducted to date also indicate various accounting
> irregularities at PPI, all related to the activities of the same former manager.
> ***Specifically, PPI's former manager recorded improper receivables and deposits
> from third parties and failed to set up adequate reserves for claims during the
> periods that PPI's customers were not insured by third parties.***

- 6 -

*The accounting and insurance issues will result in a restatement in Quality Distribution's unaudited financial statements for the nine months ended September 30, 2003, as well as its audited financial statements for the years ended December 31, 2002 and 2001. The total reduction to operating income is expected to be approximately $10 million for the time period prior to 2003 and approximately $6 million for the nine months ended September 30, 2003.* A portion of the total reduction to operating income will not impact the Company's operating results for periods subsequent to 2003. Approximately two-thirds of the restatement adjustment is expected to consist of non-cash charges.

The Company also expects to incur charges in the fourth quarter ended December 31, 2003, in connection with insurance regulatory issues arising from the irregularities at PPI and expects to incur additional expenses in 2004 relating to the investigation. The Company currently estimates these amounts, after giving effect to potential recoveries, to be approximately $3 million to $6 million, which will be paid starting in 2004.

The Company currently anticipates reporting audited 2003 results and prior year restatements on a timely basis in accordance with its periodic filing requirements. Fourth quarter 2003 revenues before fuel surcharges are expected to be up approximately 10% compared to the fourth quarter of 2002. Fourth quarter net income will be impacted by the events at PPI and various non-recurring expenses, primarily related to the initial public offering.

The above amounts remain subject to change pending completion of the investigation and the audit of the Company's financial statements, which is currently in process.

**The Financial Results Were Presented in Violation of GAAP**

28.      Each of the statements relating to Quality's financial results made in the

November 6, 2003 Registration Statement/Prospectus was false or misleading when issued. The

true but concealed facts at the time of the IPO were as follows:

(a)      Quality's operating income for the years 2001 and 2002 were overstated

by approximately $10 million (Quality originally reported a net loss for the periods of ($58.5)

million);

(b)      Quality's operating income for the nine months ending September 30,

2003 was overstated by approximately $6 million (Quality originally reported net income for the

period of $6.4 million);

(c)     Quality's receivables were overstated as receivables had been improperly recorded on PPI's books; and

(d)     Quality's reserves were understated as PPI had failed to set up reserves for claims during the period customers were not insured by a third party.

29.     As Quality has now publicly admitted, prior to its IPO, defendants caused the Company to report incorrect financial results in violation of GAAP.

30.     GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time.  SEC Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate, despite footnotes or other disclosures.  Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements.  17. C.F.R. §210.10-01(a).

31.     The fact that Quality will restate its financial results is an admission that the financial statements originally issued and included in the Registration Statement/Prospectus were false and that the overstatement of income was material.  Pursuant to GAAP, as set forth in Accounting Principles Board Opinion ("APB") No. 20, the type of restatement announced by Quality was to correct for material errors in its previously issued financial statements.  *See* APB No. 20, ¶¶7-13.  The restatement of past financial statements is a disfavored method of recognizing an accounting change as it dilutes confidence by investors in the financial statements, and makes it difficult if not impossible to generate the numbers when restatement occurs.  *See* APB No. 20, ¶14.  Thus, GAAP provides that financial statements should only be restated in limited circumstances, *i.e.*, when there is a change in the reporting entity, there is a

change in accounting principles used or to correct an error in previously issued financial statements. Quality's restatement was not due to a change in reporting entity or a change in accounting principle, but rather to errors in previously issued financial statements. Thus, the restatement is an admission by Quality that its previously issued financial results included in its IPO Registration Statement/Prospectus were false.

32. Due to these accounting improprieties, the Registration Statement/Prospectus presented the Company's financial results and statements in a manner which violated GAAP, including the following fundamental accounting principles:

(a) The principle that interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements was violated (APB No. 28, ¶10);

(b) The principle that reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions was violated (FASCON No. 1, ¶34);

(c) The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events and circumstances that change resources and claims to those resources was violated (FASCON No. 1, ¶40);

(d) The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it was violated. To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (FASCON, No. 1, ¶50);

- 9 -

(e)     The principle that financial reporting should provide information about an enterprise's financial performance during a period was violated.  Investors and creditors often use information about the past to help in assessing the prospects of an enterprise.  Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance (FASCON No. 1, ¶42);

(f)     The principle that financial reporting should be reliable in that it represents what it purports to represent was violated.  That information should be reliable as well as relevant is a notion that is central to accounting (FASCON No. 2, ¶¶58-59);

(g)     The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions was violated (FASCON No. 2, ¶79); and

(h)     The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered was violated.  The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (FASCON No. 2, ¶¶95, 97).

33.     Further, the erroneous financial information presented by defendants in the Prospectus and Registration Statement is the type of information which, because of SEC regulations, regulations of the national stock exchanges and customary business practice, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

## CLASS ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Rule 1.220 of the Florida
Rules of Civil Procedure on behalf of all persons who purchased the common stock of Quality
pursuant to the November 6, 2003 IPO (the "Class"). Excluded from the Class are each of the
defendants, members of their families and any entity in which a defendant has an interest.

35.     The Class is composed of numerous residents of Florida, as well as persons
dispersed throughout the United States, the joinder of whom is impracticable. The disposition of
their claims in a class action will provide substantial benefits to the parties and the Court. There
were more than 7 million shares of Quality stock offered by defendants through the IPO on
November 6, 2003, with shares owned by thousands of shareholders.

36.     There is a well defined community of interest in the questions of law and fact
involved in this case. The questions of law and fact which predominate over questions which
may affect individual Class members include the following:

(a)     Whether defendants misrepresented material facts in the Registration
Statement;

(b)     Whether defendants' statements omitted material facts necessary to make
the statements made, in light of the circumstance under which they were made, not misleading;

(c)     Whether defendants knew or should have known that their statements
were false and misleading;

(d)     Whether defendants violated the 1933 Act;

(e)     The extent of damage sustained and the appropriate measure of damages;
and

(f)     Whether plaintiff and members of the Class are entitled to rescission,
constructive trust and/or any equitable relief.

37.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

38.     Plaintiff will adequately protect the interest of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

39.     The class action is superior to other available methods for the fair and efficient adjudication of this controversy.

40.     The prosecution of separate actions by individual Class members would create a risk of inconsistent and varying adjudications.

### FIRST CAUSE OF ACTION

**For Violation of Section 11 of the 1933 Act
Against All Defendants**

41.     Plaintiff incorporates and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.  For purposes of this Cause of Action, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this claim is based solely on claims of strict liability and/or negligence under the 1933 Act.

42.     As the issuer of the securities, Quality is strictly liable to plaintiff for the misstatements and omissions contained in the Registration Statement.

43.     The Individual Defendants were officers or directors of Quality and each signed the Registration Statement.

44.     Each of the defendants (other than Quality) owed to the purchasers of the Quality stock, including plaintiff, the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement at the time it became effective, to ensure that they were true and that there was no omission to state a material fact required to be stated in

order to make the statements contained therein not misleading. In the exercise of reasonable care, defendants knew or should have known of the material misstatements and omissions contained in the Registration Statement.

45.    Despite these "red flags," and others, the signers of the Registration Statement failed to adequately investigate these items. A reasonable investigation would have revealed the falsity of the Registration Statement.

46.    None of the defendants named in this Cause of Action (not including Quality) made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and did not omit any material facts and were not misleading.

47.    The defendants caused to be issued and participated in the issuance of materially false and misleading statements in the Registration Statement, which misrepresented or failed to disclose, *inter alia*, the adverse facts set forth above. Thus, defendants violated §11 of the 1933 Act.

48.    Plaintiff purchased Quality stock traceable to the false and misleading Registration Statement without knowledge of the untruths or omissions alleged herein. Plaintiff could not have reasonably discovered the nature of these defendants' untruths and omissions.

49.    As a result of its purchases of Quality stock, plaintiff has suffered damages.

50.    This action was brought within one year after the discovery of the untrue statements and omissions and less than three years after the IPO.

## SECOND CAUSE OF ACTION

### For Violations of Section 12(a)(2) of the 1933 Act
### Against All Defendants

51.    Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein. For purposes of this Cause of Action, plaintiff expressly excludes and disclaims any

- 13 -

allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this claim is based solely on claims of strict liability and/or negligence under the 1933 Act.

52.     By means of the defective Registration Statement, defendants assisted in sale of shares of the Company's stock to plaintiff and other members of the Class.

53.     The Registration Statement contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above.  Defendants owed plaintiff and the other members of the Class who purchased Quality stock pursuant to the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Registration Statement as set forth above.

54.     Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Registration Statement and Prospectus at the time it acquired the Company's stock.

55.     By reason of the conduct alleged herein, defendants violated §12(a)(2) of the 1933 Act.  As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased Quality stock pursuant to the Registration Statement sustained substantial damages in connection with their purchases of Quality securities.  Accordingly, plaintiff and the other members of the Class who hold Quality securities pursuant to the Registration Statement have the right to rescind and recover the consideration paid for their shares, and hereby tender their shares to the defendants sued herein.  Class members who have sold their shares seek damages to the extent permitted by law.

- 14 -

## THIRD CAUSE OF ACTION

### For Violations of Section 15 of the 1933 Act
### Against the Individual Defendants

56.    Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein. For purposes of this Cause of Action, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this claim is based solely on claims of strict liability and/or negligence under the 1933 Act.

57.    Each of the Individual Defendants was a controlling person of the Company within the meaning of §15 of the 1933 Act at the time of the Offering. At the time the Registration Statement was filed with the SEC and declared effective, each of the Individual Defendants had the power and authority to cause the Company to engage in the wrongful conduct complained of herein.

58.    None of the Individual Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and devoid of any misstatements or omissions of material fact. Therefore, by reason of their positions of control over the Company, as alleged herein, each of the Individual Defendants is liable jointly and severally with and to the same extent that Quality is liable to plaintiff and the other members of the Class as a result of the wrongful conduct alleged herein.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.    Awarding plaintiff rescission or damages;

B.    Awarding plaintiff pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees and other costs;

- 15 -

C.      Awarding plaintiff such equitable relief, including preliminary and/or permanent injunctive relief, to freeze or prevent the disposition of the assets of the defendants as necessary to preserve and protect plaintiff's rights to recover; and

D.      Awarding such other legal or equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: March 25, 2004                    MILBERG WEISS BERSHAD
                                         HYNES & LERACH LLP


                                         Maya Saxena
                                         Florida Bar No. 0095494
                                         R. Timothy Vannatta
                                         Florida Bar No. 0055890
                                         The Plaza, Suite 900
                                         Boca Raton, FL  33486
                                         Tel: (561) 361-5000
                                         Fax: (561) 367-8400



                                         MILBERG WEISS BERSHAD
                                           HYNES & LERACH LLP
                                         WILLIAM S. LERACH
                                         DARREN J. ROBBINS
                                         401 B Street, Suite 1700
                                         San Diego, CA  92101
                                         Tel: (619) 231-1058
                                         Fax: (619) 231-7423

- 16 -

MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
SANDRA STEIN
1845 Walnut Street, 9th Floor
Philadelphia, PA  19103
Tel: (215) 988-9546
Fax: (215) 988-9885

Attorneys for Plaintiff

APR 01 2004 10:11AM  HP LASERJET 3200                                    p.2

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL
CIRCUIT IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
GENERAL CIVIL DIVISION

Supermarket Local 449 Pension &
Retirement Security Funds, On
Behalf of Itself and All Others Similarly Situated

CASE NO.: 04 03013

DIVISION: **DIVISION H**

PLAINTIFF/PETITIONER,

vs

Quality Distribution, Inc., Thomas L. Finkbiner,
Samuel M. Hensley, Anthony R. Ignaczak,
Joshua J. Harris, Michael D. Weiner,
Marc J. Rowan, Marc E. Becker, Donald C. Orris,
Credit Suisse First Boston LLC, Bear, Stearns &
Co. Inc. And Deutsche Bank Securities Inc.

DEFENDANT/RESPONDENT

IF YOU ARE A PERSON WITH A DISABILITY WHO
NEEDS ANY ACCOMMODATION IN ORDER TO
PARTICIPATE IN THIS PROCEEDING YOU ARE
ENTITLED, AT NO COST TO YOU, TO THE
PROVISION OF CERTAIN ASSISTANCE. PLEASE
CONTACT THE CLERK OF CIRCUIT COURT,
CIRCUIT CIVIL DIVISION, ROOM 138,
HILLSBOROUGH COUNTY COURTHOUSE, 800 E.
PIERCE ST., TAMPA, FL 33602, TELEPHONE (813)
8100, EX 7282 WITHIN 2 WORKING DAYS OF YOUR
RECEIPT OF THIS DOCUMENT. IF YOU ARE
HEARING IMPAIRED OR VOICE IMPAIRED
CALL 1-800-955-8771.

TRUE COPY
SERVED
DATE: 3-31-04
TIME: 1:00PM
BY: _____
#: CPS01220533
CERTIFIED SHERIFF
APPOINTED PROCESS
SERVER
13th CIRCUIT

**SUMMONS**

THE STATE OF FLORIDA:
TO EACH SHERIFF OF THE STATE:

        YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action
on the defendant(s).

        Quality Distribution, Inc.
        3802 Corporex Park Drive
        Tampa, Florida 33619.

        Each defendant is required to serve written defenses to the complaint or petition on plaintiff's attorney,
whose name and address is:

        Maya Saxena
        Milberg Weiss Bershad Hynes & Lerach LLP
        5355 Town Center Road, Suite 900
        Boca Raton, FL 33486
        (561) 361-5000

within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the
original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately
thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief
demanded in the complaint or petition.

DATED on _____MAR 2 6 2004_____

RICHARD AKE
As Clerk of the Court

By: _____
        As Deputy Clerk

        **(See attached or use reverse side for return information)**

CCV1032(54001)

EXHIBIT
**2**

FILED

'FEB 24 AM 11 22

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| ANDREW MEIGS, Individually and On Behalf of All Others Similarly Situated, X | CIVIL ACTION NO. 8:04-CV-355-T-24mss |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS |
| vs. | |
| QUALITY DISTRIBUTION, INC., THOMAS L. FINKBINER and SAMUEL M. HENSLEY, | |
| Defendants. X | |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff makes the following allegations, except as to allegations specifically pertaining

to plaintiff and plaintiff's counsel, based upon the investigation undertaken by plaintiff's counsel,

which investigation included analysis of publicly-available news articles and reports, public

filings, securities analysts' reports and advisories about Quality Distribution Inc. ("Quality

Distribution" or the "Company"), press releases and other public statements issued by the

Company, and media reports about the Company and believes that substantial additional

evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for

discovery.

$150.00
TO45778



EXHIBIT
tabbies
3

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class (the "Class") consisting of all persons other than defendants who purchased the common stock of Quality Distribution between November 7, 2003 and February 2, 2004, seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act"). This action concerns the initial public offering of Quality Distribution common stock which took place on or about November 7, 2003 (the "IPO").

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act [15 U.S.C. §§ 77k, 77l(2) and 77o].

3.    This Court has jurisdiction of this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and 28 U.S.C. § 1331.

4.    Venue is properly laid in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. § 1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District and Quality Distribution maintains its principal place of business in this District.

5.    In connection with the acts and conduct alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the NASDAQ National Market (the "NASDAQ"), a national securities exchange.

- 2 -

## PARTIES

6.     Plaintiff Andrew Meigs purchased Quality Distribution common stock, as set forth in the certification attached hereto and incorporated herein by reference, traceable to the Company's IPO, and was damaged thereby.

7.     Defendant Quality Distribution is a Florida corporation and maintains its principal executive offices at 3802 Corporex Park Drive Tampa, Florida 33619.  Quality Distribution transports a broad range of chemical products and also provides transportation management, transloading, tank cleaning, dry-bulk handling and other logistical services.

8.     (1)     Defendant Thomas L. Finkbiner ("Finkbiner") was, at all relevant times, President and Chief Executive Officer of Quality Distribution.  Finkbiner signed the Registration Statement.

        (2)     Defendant Samuel M. Hensley ("Hensley") was, at all relevant times, Senior Vice President and Chief Financial Officer of Quality Distribution.  Hensley signed the Registration Statement.

        (3)     Defendants Finkbiner and Hensley are collectively referred to herein as the "Individual Defendants."

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

9.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of itself and all persons other than defendants who purchased the securities of Quality Distribution between November 7, 2003 and February 2, 2004. Excluded from the Class are defendants herein, members of the immediate family of each of the defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any of the defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

10.    The members of the Class are so numerous that joinder of all members is impracticable. Quality Distribution sold more than 7 million shares of Quality Distribution common stock in the IPO. The precise number of Class members is unknown to plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of Quality Distribution or its transfer agent or the underwriters to the IPO. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

11.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

- 4 -

12.    Plaintiff's claims are typical of the claims of the other members of the Class because plaintiffs and all the class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

13.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

14.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    Whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    Whether the prospectus and registration statement issued by defendants to the investing public in connection with the IPO omitted and/or misrepresented material facts about Quality Distribution and its business; and

(c)    The extent of injuries sustained by members of the Class and the appropriate measure of damages.

- 5 -

## SUBSTANTIVE ALLEGATIONS

### Background

15.    Quality Distribution transports a broad range of chemical products and also provides transportation management, transloading, tank cleaning, dry-bulk handling and other logistical services.

16.    On or about November 5, 2003, Quality Distribution filed with the SEC a Form S-1/A Registration Statement (the "Registration Statement"), for the IPO.

17.    On or about November 7, 2003, the prospectus (the "Prospectus") filed in connection with the IPO, which forms part of the Registration Statement, became effective and 7,000,000 of Quality Distribution's shares were sold to the public, thereby raising approximately $110.7 million.

18.    That same day, Quality Distribution issued a press release announcing the IPO and indicating that it had granted the underwriters for the IPO an option to purchase up to an additional 875,000 shares of its common stock to cover over-allotments.

19.    As described below in ¶21, the Prospectus issued in connection with the IPO was materially false and misleading.

20.    The Prospectus contained audited financial statements for the fiscal years 2000 through 2002, both ending on December 31 and for the nine months ending September 30, 2003. For the fiscal year ended December 31, 2001, the Company reported revenues of $510.7 million and a net loss of $13.4 million. For the fiscal year ended December 31, 2002, the Company reported revenues of $516.5 million and a net loss of $45.1 million.  For the nine months ending

- 6 -

September 30, 2003, the Company reported revenues of $426.3 million and net income of $6.4 million.

21.     The statements referenced above in ¶ 20 were materially false and misleading because Quality Distribution materially overstated its financial results and its financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP").

22.     On February 2, 2003, the Company announced that it expected to take a fourth-quarter charge and restate its results back to 2001 after discovering insurance law violations at Power Purchasing Inc. ("PPI"), one of its subsidiaries. The Company expects to take fourth-quarter 2003 charges of between $3 million and $6 million and it forecast net income for the same period would be negatively impacted by the problems at the subsidiary, along with other one-time expenses.

23.     According to media reports following the announcement, the Company's former manger of its PPI subsidiary "effectively brokered to customers nonexistent insurance coverage." The former employee paid claims through the Company directly instead of through an insurer in violation of state insurance regulations. The former manager also failed to renew certain insurance policies for PPI's customers yet continued to collect premiums. In a press release entitled "Quality Distribution Reports Irregularities at Non-Core Insurance Brokerage Subsidiary; Company Will Take Fourth Quarter Charge and Restate Results ," the Company stated, in pertinent part, that:

> The investigation was initiated by the Company's internal audit department and is currently being conducted by the Audit Committee of the Board of Directors with the assistance of outside legal counsel and a forensic accounting firm. The results

- 7 -

of the investigation conducted to date also indicate various accounting irregularities at PPI, all related to the activities of the same former manager. Specifically, PPI's former manager recorded improper receivables and deposits from third parties and failed to set up adequate reserves for claims during the periods that PPI's customers were not insured by third parties.

The accounting and insurance issues will result in a restatement in Quality Distribution's unaudited financial statements for the nine months ended September 30, 2003, as well as its audited financial statements for the years ended December 31, 2002 and 2001. The total reduction to operating income is expected to be approximately $10 million for the time period prior to 2003 and approximately $6 million for the nine months ended September 30, 2003. A portion of the total reduction to operating income will not impact the Company's operating results for periods subsequent to 2003. Approximately two-thirds of the restatement adjustment is expected to consist of non-cash charges.

The Company also expects to incur charges in the fourth quarter ended December 31, 2003, in connection with insurance regulatory issues arising from the irregularities at PPI and expects to incur additional expenses in 2004 relating to the investigation. The Company currently estimates these amounts, after giving effect to potential recoveries, to be approximately $3 million to $6 million, which will be paid starting in 2004.

The Company currently anticipates reporting audited 2003 results and prior year restatements on a timely basis in accordance with its periodic filing requirements. Fourth quarter 2003 revenues before fuel surcharges are expected to be up approximately 10% compared to the fourth quarter of 2002. Fourth quarter net income will be impacted by the events at PPI and various non-recurring expenses, primarily related to the initial public offering.

The above amounts remain subject to change pending completion of the investigation and the audit of the Company's financial statements, which is currently in process. [Emphasis added.]

24.    At the time of the filing of this complaint, the price of Quality Distribution

common stock is $14.681 per share.

## COUNT I

### Against All Defendants For Violations
### Of Section 11 Of The Securities Act

25.     Plaintiff repeats and realleges each and every allegation contained above.

26.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against all defendants.

27.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed adequately to disclose material facts as described above.

28.     Quality Distribution is the registrant for the IPO.  The defendants named herein were responsible for the contents and dissemination of the Registration Statement and the Prospectus.

29.     As issuer of the shares, Quality Distribution is strictly liable to plaintiff and the Class for the misstatements and omissions.

30.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

31.     Defendants issued, caused to be issued and participated in the issuance of materially false and misleading written statements to the investing public that were contained in

- 9 -

the Prospectus, which misrepresented or failed to disclose, inter alia, the facts set forth above. By reasons of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

32.     Plaintiff acquired Quality Distribution shares traceable to and in reliance on, the Registration Statement.

33.     Plaintiff and the Class have sustained damages. The value of Quality Distribution shares has declined substantially subsequent to and due to defendants' violations.

34.     At the times they purchased Quality Distribution shares, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to February 2, 2003. Less than two years elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this Complaint. Less than five years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this Complaint.

## COUNT II

### Against The Individual Defendants For
### Violations of Section 15 of the Securities Act

35.     Plaintiff repeats and realleges each and every allegation contained above.

36.     This Count is brought pursuant to Section 15 of the Securities Act against the Individual Defendants.

- 10 -

37.    Each of the Individual Defendants was a control person of Quality Distribution by virtue of their position as directors and/or senior officers of Quality Distribution. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Quality Distribution.

38.    Each of the Individual Defendants was a culpable participant in the violations of Sections 11 of the Securities Act alleged in Count I above, based on their having signed the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) declaring this action to be a class action properly maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

(b) awarding plaintiff and other members of the Class damages together with interest thereon;

(c) awarding plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

(d) awarding plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

- 11 -

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: February 25, 2004

CAULEY GELLER BOWMAN
& RUDMAN, LLP

By: _____

Paul J. Geller
Fla. Bar No. 984795
Jonathan M. Stein
Fla. Bar No. 009784
Jack Reise
Fla. Bar No. 058149
197 South Federal Highway
Suite 200
Boca Raton, FL 33432
Telephone:    (561) 750-3000
-and-
Samuel H. Rudman
David A. Rosenfeld
Mario Alba Jr.
200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone:    (631) 367-7100

SCHIFFRIN & BARROWAY, LLP
Marc Topaz
Three Bala Plaza East, Suite 500
Bala Cynwyd, PA 19004
Telephone:    (610) 667-7706

Attorneys for Plaintiff

- 12 -

**CERTIFICATION OF NAMED PLAINTIFF**
**PURSUANT TO FEDERAL SECURITIES LAWS**

I, (print name) _Andrew R. Meigs_ ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the Complaint and authorizes its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transaction(s) in the Quality Distribution, Inc. (Nasdaq: QLTY) security that is the subject of this action during the Class Period is/are as follows:

| No. of Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| 20.00 | Buy | Jan 7, 2004 | $19.72 |
|  |  |  |  |
|  |  |  |  |

*List additional transactions on a separate sheet of paper, if necessary.

5. Plaintiff has complete investment authority and is the agent and attorney-in-fact with full power and authority to bring a suit to recover for investment losses.

6. During the three years prior to the date of this Certification, Plaintiff has sought to serve or served as a representative party of a class in the following actions filed under the federal securities laws (if none, so indicate): _NONE_.

7. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _20_ day of _February_, 200_4_.

_____
Signature

_Andrew R. Meigs_
Print Name

FILED

2004 APR 15 AM 11: 10

CLERK'S DISTRICT COURT
TAMPA, FLORIDA

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

SONDRA COCHRAN, individually and On Behalf of
All Others Similarly Situated,

        Plaintiff,

        vs.

QUALITY DISTRIBUTION, INC., THOMAS L.
FINKBINER and SAMUEL M. HENSLEY,

        Defendants.

CIVIL ACTION
NO. 8'04CV 817-T27 MSS

CLASS ACTION
COMPLAINT
FOR VIOLATIONS OF
FEDERAL SECURITIES
LAWS

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff makes the following allegations, except as to allegations specifically pertaining

to plaintiff and plaintiff's counsel, based upon the investigation undertaken by plaintiff's counsel,

which investigation included analysis of publicly-available news articles and reports, public

filings, securities analysts' reports and advisories about Quality Distribution, Inc. ("Quality

Distribution" or the "Company"), press releases and other public statements issued by the

Company, and media reports about the Company and believes that substantial additional

evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for

discovery.



EXHIBIT
4

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class (the "Class") consisting of all persons other than defendants who purchased the common stock of Quality Distribution between November 7, 2003 and February 2, 2004, seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act"). This action concerns the initial public offering of Quality Distribution common stock which took place on or about November 7, 2003 (the "IPO").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act [15 U.S.C. §§ 77k, 77l(2) and 77o].

3.      This Court has jurisdiction of this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and 28 U.S.C. § 1331.

4.      Venue is properly laid in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. § 1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District and Quality Distribution maintains its principal place of business in this District.

5.      In connection with the acts and conduct alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the NASDAQ National Market (the "NASDAQ"), a national securities exchange.

- 2 -

## PARTIES

6.     Plaintiff Sondra Cochran purchased Quality Distribution common stock, as set forth in the certification attached hereto and incorporated herein by reference, traceable to the Company's IPO, and was damaged thereby.

7.     Defendant Quality Distribution is a Florida corporation and maintains its principal executive offices at 3802 Corporex Park Drive Tampa, Florida 33619.  Quality Distribution transports a broad range of chemical products and also provides transportation management, transloading, tank cleaning, dry-bulk handling and other logistical services.

8.     (a)    Defendant Thomas L. Finkbiner ("Finkbiner") was, at all relevant times, President and Chief Executive Officer of Quality Distribution.  Finkbiner signed the Registration Statement.

       (b)    Defendant Samuel M. Hensley ("Hensley") was, at all relevant times, Senior Vice President and Chief Financial Officer of Quality Distribution.  Hensley signed the Registration Statement.

       (c)    Defendants Finkbiner and Hensley are collectively referred to herein as the "Individual Defendants."

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

9.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of itself and all persons other than defendants who purchased the securities of Quality Distribution between November 7, 2003 and February 2, 2004. Excluded from the Class are defendants herein, members of the immediate family of each of the defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any of the defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

10.    The members of the Class are so numerous that joinder of all members is impracticable. Quality Distribution sold more than 7 million shares of Quality Distribution common stock in the IPO. The precise number of Class members is unknown to plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of Quality Distribution or its transfer agent or the underwriters to the IPO. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

11.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

- 4 -

12.     Plaintiffs claims are typical of the claims of the other members of the Class because plaintiffs and all the class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

13.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

14.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     Whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     Whether the prospectus and registration statement issued by defendants to the investing public in connection with the IPO omitted and/or misrepresented material facts about Quality Distribution and its business; and

(c)     The extent of injuries sustained by members of the Class and the appropriate measure of damages.

- 5 -

## SUBSTANTIVE ALLEGATIONS

### Background

15.    Quality Distribution transports a broad range of chemical products and also provides transportation management, transloading, tank cleaning, dry-bulk handling and other logistical services.

16.    On or about November 5, 2003, Quality Distribution filed with the SEC a Form S-1/A Registration Statement (the "Registration Statement"), for the IPO.

17.    On or about November 7, 2003, the prospectus (the "Prospectus") filed in connection with the IPO, which forms part of the Registration Statement, became effective and 7,000,000 of Quality Distribution's shares were sold to the public, thereby raising approximately $110.7 million.

18.    That same day, Quality Distribution issued a press release announcing the IPO and indicating that it had granted the underwriters for the IPO an option to purchase up to an additional 875,000 shares of its common stock to cover over-allotments.

19.    As described below in ¶21, the Prospectus issued in connection with the IPO was materially false and misleading.

20.    The Prospectus contained audited financial statements for the fiscal years 2000 through 2002, both ending on December 31 and for the nine months ending September 30, 2003. For the fiscal year ended December 31, 2001, the Company reported revenues of $510.7 million and a net loss of $13.4 million. For the fiscal year ended December 31, 2002, the Company reported revenues of $516.5 million and a net loss of $45.1 million.  For the nine months ending

- 6 -

September 30, 2003, the Company reported revenues of $426.3 million and net income of $6.4 million.

21.    The statements referenced above in ¶ 20 were materially false and misleading because Quality Distribution materially overstated its financial results and its financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP").

22.    On February 2, 2003, the Company announced that it expected to take a fourth-quarter charge and restate its results back to 2001 after discovering insurance law violations at Power Purchasing Inc. ("PPI"), one of its subsidiaries. The Company expects to take fourth-quarter 2003 charges of between $3 million and $6 million and it forecast net income for the same period would be negatively impacted by the problems at the subsidiary, along with other one-time expenses.

23.    According to media reports following the announcement, the Company's former manger of its PPI subsidiary "effectively brokered to customers nonexistent insurance coverage." The former employee paid claims through the Company directly instead of through an insurer in violation of state insurance regulations. The former manager also failed to renew certain insurance policies for PPI's customers yet continued to collect premiums.  In a press release entitled "Quality Distribution Reports Irregularities at Non-Core Insurance Brokerage Subsidiary; Company Will Take Fourth Quarter Charge and Restate Results," the Company stated, in pertinent part, that:

> The investigation was initiated by the Company's internal audit department and is currently being conducted by the Audit Committee of the Board of Directors with the assistance of outside legal counsel and a forensic accounting firm. The results

- 7 -

of the investigation conducted to date also indicate various accounting irregularities at PPI, all related to the activities of the same former manager. Specifically, PPI's former manager recorded improper receivables and deposits from third parties and failed to set up adequate reserves for claims during the periods that PPI's customers were not insured by third parties.

The accounting and insurance issues will result in a restatement in Quality Distribution's unaudited financial statements for the nine months ended September 30, 2003, as well as its audited financial statements for the years ended December 31, 2002 and 2001. The total reduction to operating income is expected to be approximately $10 million for the time period prior to 2003 and approximately $6 million for the nine months ended September 30, 2003. A portion of the total reduction to operating income will not impact the Company's operating results for periods subsequent to 2003. Approximately two-thirds of the restatement adjustment is expected to consist of non-cash charges.

The Company also expects to incur charges in the fourth quarter ended December 31, 2003, in connection with insurance regulatory issues arising from the irregularities at PPI and expects to incur additional expenses in 2004 relating to the investigation. The Company currently estimates these amounts, after giving effect to potential recoveries, to be approximately $3 million to $6 million, which will be paid starting in 2004.

The Company currently anticipates reporting audited 2003 results and prior year restatements on a timely basis in accordance with its periodic filing requirements. Fourth quarter 2003 revenues before fuel surcharges are expected to be up approximately 10% compared to the fourth quarter of 2002. Fourth quarter net income will be impacted by the events at PPI and various non-recurring expenses, primarily related to the initial public offering.

The above amounts remain subject to change pending completion of the investigation and the audit of the Company's financial statements, which is currently in process. [Emphasis added.]

24.     At the time of the filing of this complaint, the price of Quality Distribution

common stock is $14.681 per share.

## COUNT I

### Against All Defendants For Violations
### Of Section 11 Of The Securities Act

25.    Plaintiff repeats and realleges each and every allegation contained above.

26.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §
77k, on behalf of the Class, against all defendants.

27.    The Registration Statement for the IPO was inaccurate and misleading, contained
untrue statements of material facts, omitted to state other facts necessary to make the statements
made not misleading, and concealed and failed adequately to disclose material facts as described
above.

28.    Quality Distribution is the registrant for the IPO.  The defendants named herein
were responsible for the contents and dissemination of the Registration Statement and the
Prospectus.

29.    As issuer of the shares, Quality Distribution is strictly liable to plaintiff and the
Class for the misstatements and omissions.

30.    None of the defendants named herein made a reasonable investigation or
possessed reasonable grounds for the belief that the statements contained in the Registration
Statement and the Prospectus were true and without omissions of any material facts and were not
misleading.

31.    Defendants issued, caused to be issued and participated in the issuance of
materially false and misleading written statements to the investing public that were contained in

- 9 -

the Prospectus, which misrepresented or failed to disclose, inter alia, the facts set forth above. By reasons of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

32.    Plaintiff acquired Quality Distribution shares traceable to and in reliance on, the Registration Statement.

33.    Plaintiff and the Class have sustained damages.  The value of Quality Distribution shares has declined substantially subsequent to and due to defendants' violations.

34.    At the times they purchased Quality Distribution shares, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to February 2, 2003. Less than two years elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this Complaint.  Less than five years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this Complaint.

## COUNT II

### Against The Individual Defendants For
### Violations of Section 15 of the Securities Act

35.    Plaintiff repeats and realleges each and every allegation contained above.

36.    This Count is brought pursuant to Section 15 of the Securities Act against the Individual Defendants.

- 10 -

37.    Each of the Individual Defendants was a control person of Quality Distribution by virtue of their position as directors and/or senior officers of Quality Distribution. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Quality Distribution.

38.    Each of the Individual Defendants was a culpable participant in the violations of Sections 11 of the Securities Act alleged in Count I above, based on their having signed the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a)  declaring this action to be a class action properly maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

(b)  awarding plaintiff and other members of the Class damages together with interest thereon;

(c)  awarding plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

(d)  awarding plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

- 11 -

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 14, 2004

CAULEY GELLER BOWMAN
& RUDMAN, LLP

By:
    Paul J. Geller
    Fla. Bar No. 984795
    Jonathan M. Stein
    Fla. Bar No. 009784
    Jack Reise
    Fla. Bar No. 058149
    197 South Federal Highway - Suite 200
    Boca Raton, FL 33432
    (561) 750-3000
    -and-
    Samuel H. Rudman
    David A. Rosenfeld
    Mario Alba, Jr.
    200 Broadhollow Road - Suite 406
    Melville, NY 11747
    (631) 367-7100

BRODSKY & SMITH, LLC
    Evan J. Smith
    Two Bala Plaza - Suite 602
    Bala Cynwyd, PA 19004
    (610) 667-6200

Attorneys for Plaintiff

- 12 -

## PLAINTIFF'S CERTIFICATION

I, (Mr./Ms.)  Sondra Cochran  , ("Plaintiff") declare under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint and authorized the commencement of an action on Plaintiff's behalf.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in Quality Distribution securities during the Class Period specified in the Complaint are as follows:

| Date | # of Shares Purchased | # of Shares Sold | Price |
|------|----------------------|------------------|-------|
| 11-06-2003 | 2,950 | 0 | 17.00 |

5. During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws. [Or, Plaintiff has served as a class representative in the action(s) listed below:]

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this  29th  day of February, 2004.

Sign Name: _Sondra A Cochran_
Print Name: Sondra A. Cochran

Address: 730 Lantern Lane

State, Zip Code:  Blue Bell, PA 19422

County:  Montgomery